CITY OF BEAUMONT v. MASTERSON.

(Court of Civil Appeals of Texas. Galveston. Dec. 26, 1911.) Rehearing Denied Jan. 25, 1912.)

1. APPEAL AND ERROR (§ 719*)—REVIEW—ASSIGNMENT OF ERRORS — "ERROR APPARENT ON FACE OF RECORD."

In an action against a city to recover a balance due on a street-paving contract, an alleged error, in that, on the undisputed evidence, plaintiff could not recover on a ground, the determination of which would require an examination of almost the entire record; including the pleadings and evidence contained in a lengthy statement of facts, was not an "error apparent on the face of the record," within Rev. St. 1895, art. 1014, authorizing a review of such errors without assignment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 2968; Dec. Dig. § 719.*

For other definitions, see Words and Phrases, vol. 3, p. 2459.]

2. MUNICIPAL CORPORATIONS (§ 407*) — STREET IMPROVEMENTS — SPECIAL ASSESSMENTS.

Const. art. 11, §§ 5–7, authorizing municipal corporations to levy taxes, etc., have no application to proceedings for the improvement of streets, the cost to be paid in cash, two-thirds to be derived from special assessments on abutting property, and the other one-third in improvement bonds of the city.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 407.*]

3. MUNICIPAL CORPORATIONS (§ 864*) — STREET IMPROVEMENTS—SPECIAL ASSESSMENTS—DEFICIT—"DEBT."

Where a city took proceedings to improve a street, the cost to be paid, two-thirds from assessments on abutting property and one-third by city bonds, that a part of the assessments levied were uncollectible did not require that the city foresee such event, and treat the uncollectible portion as a debt, within Const. art. 11, § 5, providing that no debt shall ever be created by any city, unless at the same time provision is made to assess and annually collect a sufficient sum to pay the interest thereon and create a sinking fund of at least 2 per cent.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 864.*

For other definitions, see Words and Phrases, vol. 2, pp. 1864–1886; vol. 8, p. 7628.]

4. MUNICIPAL CORPORATIONS (§ 374*) — STREET IMPROVEMENTS—BALANCE OF PRICE —INTEREST.

Where a street improvement contractor sued primarily on an improvement contract for money due for work fully performed, and to be paid for when so performed, and not on a warrant for the balance due, which merely evidenced the city treasurer's authority to pay the money, and it appeared that the city had failed to take proper steps to protect itself against defaulting property owners assessed for the improvement, and also that moneys collected from such assessments had been illegally diverted to other purposes, the city was liable for interest on the amount due.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 374.*]

5. MUNICIPAL CORPORATIONS (§ 374*) — STREET IMPROVEMENT CONTRACT — UNPAID BALANCE—ACTION—PARTIES.

Where, in a suit by a municipal contractor against a city for a balance due on an improvement contract, the city claimed that its treasurer was a defaulter to the amount of $4,014, claimed to have been appropriated, but not paid or credited on plaintiff's claim, the city's claim against its treasurer was separate and distinct from plaintiff's right of action; and hence the city was not entitled to have the treasurer made a party defendant, and to recover over against him and his bondsmen to the extent of such alleged credit, in case plaintiff recovered against the city.

[Ed. Note.—For other cases, see Municipal Corporations, Dec. Dig. § 374.*]

6. APPEAL AND ERROR (§ 1036*)—REVIEW—PARTIES—PREJUDICE.

In an action by a city contractor to recover a balance due on a street improvement contract, the city was not prejudiced by an order dismissing the city treasurer and his bondsmen, against whom the city sought to recover over for an alleged credit claimed to have been misappropriated and unpaid on such contract, where the undisputed evidence showed that such sum had been duly paid and credited.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1036.*]

Appeal from District Court, Jefferson County; L. B. Hightower, Jr., Judge.

Action by H. Masterson against the City of Beaumont. Judgment for plaintiff, and defendant appeals. Affirmed.

Crook, Lord & Lawhon, A. Ludlow Calhoun, and Smith & Fleming, for appellant. Presley K. Ewing, Duff & Duff, and Masterson & Masterson, for appellee.

REESE, J. This is a suit by H. Masterson against the city of Beaumont to collect the balance due on a paving contract, with interest. The case was tried with the assistance of a jury. The court submitted the case to the jury on two special issues, and upon the return of a verdict favorable to the plaintiff on both issues rendered a judgment for plaintiff for $14,095.40, with interest from the date of the judgment at the rate of 6 per cent. per annum, and awarding a peremptory writ of mandamus to the mayor and councilmen, ordering the levying and collection of the necessary tax to pay the judgment. No point is made as to the character of the relief given by the judgment, and it is not necessary to state more fully on this point. Defendant filed a motion for a new trial, which was overruled, and brings the case to this court on appeal.

It was alleged by the petition, substantially, that the city had entered into a contract with H. W. Downey & Co. to do certain street paving; that by agreement with the city Downey & Co. had assigned the contract to Masterson, who had agreed to complete the work, and was to receive the payment therefor provided in the contract; that the work had been completed according to contract and accepted by the city prior to January 22, 1904; and that thereupon the following order on the city treasurer had been executed by the mayor and delivered to Masterson: "No. 78. Paving Fund. The State of Texas, County of Jefferson. The treasurer of the city of Beaumont will pay to H. W. Downey & Co., or order, twenty-two thousand, three hundred sixty-eight & $^{51}/_{100}$ dollars, the amount allowed him by the city council of the city of Beaumont, on the 22 day of January, A. D. 1904, for full payment of final estimates. Witness, Thos. H. Langham, Mayor, with the seal of said city and the attestation of the secretary thereof, this 22 day of January, A. D. 1904. Thos. H. Langham, Mayor. [Seal.] Attest: W. A. Ives, City Secretary. $22,368.51.—Page # 131, No. 2. Registered this 22 day of Jan. 1904. F. W. Greer, Treasurer."

It was alleged that Masterson was the legal and equitable owner of said order or warrant, and entitled to the money; that thereafter certain payments were made on the same, which were duly credited. An itemized statement is made, showing the amount of the original warrant and the various payments and the dates thereof, according to which, allowing interest on the original amount at 6 per cent. per annum, and calculating interest as in case of partial payments on interest-bearing indebtedness, there was due, on December 18, 1906, the date of the last payment, the sum of $11,470.58.

The petition is very lengthy, and contains full allegations as to the several provisions of the charter and ordinances of the city relating to this contract, and the specifications and provisions of the contract, which will, so far as necessary to a disposition of this appeal, be referred to in discussing the assignments of error.

In its answer defendant claimed that, if it owed plaintiff anything, it was not required to pay interest thereon, and that all payments made should be credited on the principal sum. It was alleged that there had been paid to plaintiff, also, the sum of $4,014 in an item referred to as the Adams paving certificate, which had not been credited by him. Defendant also sought to have the city treasurer and his bondsmen made parties, upon the allegation that the city treasurer claimed that he had paid this amount to plaintiff, and prayed that if it should be found that he had not defendant have judgment against him and his bondsmen for the amount. To this portion of the answer, plaintiff pleaded by exception misjoinder of parties and causes of action, which the court sustained, and dismissed the treasurer and his bondsmen from the case.

It appeared from the allegations of the petition, substantially, that, according to the provisions of the city charter, the city was authorized to have this sort of work done by contract, one-third to be paid for by the city, and two-thirds by the abutting property owners; that the one-third of the work in this case had been paid for in bonds of the city; that the city had levied a tax upon the abutting property owners for the respective amounts due from them, but that a large part of said taxes had not been collected, and were uncollectible. It was alleged, however, that enough had been collected to pay the amount due plaintiff, but a large amount thereof had been unlawfully diverted and applied to other purposes. This case deals only with the two-thirds of the compensation which appellee was to receive for the work, which was to be paid by assessments upon the abutting property owners; the other one-third, which was to be paid in bonds, having been paid.

In May, 1903, H. W. Downey & Co. entered into a written contract with the city of Beaumont whereby, for certain compensation provided in the contract, Downey & Co. were to pave certain streets and portions of streets of the city. Certain specifications and bid or proposal for the work are referred to in the contract, but appear not to have been introduced in evidence. By the terms of the contract, Downey & Co. were to

furnish the material and do the work for an agreed price. The contract provides for payment to be made by appellant, and contains the following provision: "In the event said party of the first part should fail to collect from the abutting property owners along any portion or portions of the streets herein designated, their proportion of the cost of said pavement, then and in that event, party of the first part shall have the right to instruct said parties of the second part to omit the paving of said portion or shall give the parties of the second part written notice to that effect, not less than three days before the work of said parties of the second part shall have been actually begun in front of such delinquent property."

This contract was, on October 2, 1903, assigned by Downey & Co. to H. Masterson, and by agreement of all parties Masterson was to complete the work and receive the pay. The contract was fully authorized by ordinances of the city, and by ordinances regularly passed a tax was levied to pay interest and create sinking fund to cover one-third of the work. Proper steps were taken to ascertain the owners of the abutting property and the proportion of the cost to be borne by each, and a proper tax was levied and assessed against them to pay the two-thirds of the costs, which was to be thus borne. The work was finally completed in December, 1903, and accepted by the city by ordinance, and the mayor was authorized to draw a warrant on the city treasurer, in favor of H. W. Downey & Co., and deliver the same to appellee, for the sum of $22,368.-51, being the balance due him. The warrant was accordingly drawn by the mayor, attested by the secretary on January 22, 1904, and delivered to appellee. The warrant was by the appellee on the same day presented to the city treasurer and payment demanded, but there being no funds on hand it was duly registered by the treasurer. Certain payments were made, from time to time, on this warrant. Calculating interest at 6 per cent. per annum from the date of the warrant, according to the rule as to application of payment first to accrued interest, the last payment, made December 18, 1906, reduced the debt to $11,470.58, which is the amount claimed to be due, with interest thereon from said last date, and which is the amount of the judgment.

Of the tax levied and assessed against the abutting property owners, $8,563.19 has never been collected, and is not collectible on account of such property being protected by its homestead character from the lien, and the owners being execution proof. Of the amount collected for the purpose of paying for the paving, the following amounts had been diverted from such purpose by the city and applied to other purposes: To the city engineers for supervising the work, $4,351.59; commissions to the city treasurer, $2,851.27;

to pay a note for borrowed money, $2,101.78; transferred to sewer fund, $2,000; total $11,-204.64.

One of the issues submitted to the jury was whether appellee had given credit to the city for a certain item of $4,014, claimed to have been paid to him in certain paving tax receipts issued by the city to one Adams, and which appellee had used in a deal with said Adams. The jury found this issue in favor of appellee, and we find that the evidence conclusively shows that the city had been given the proper credit for this item by appellee; also that it was agreed between appellee and appellant that the matter of charging appellee with an item of $1,-497.97 interest due on bonds taken by appellee had been adjusted, whereby he should not be charged with such item. This was the other issue, pleaded by appellant, submitted to the jury and found in favor of appellee. The finding of the jury is not disputed by appellant upon either issue.

The charter of the city authorized the work involved in this action, and provides that one-third of the cost shall be paid for by the city and two-thirds by the abutting property owners, and provides for levying a tax therefor, together with the cost of collecting the same, which shall be a lien on such abutting property (except homesteads) and a personal charge against the owner, and that the same shall be used for no other purpose. Under the power thus given, the board of aldermen passed the necessary ordinances authorizing the contract with Downey & Co., and levying the taxes aforesaid to provide for paying for the paving. It was provided, both in the ordinances and in the contract with Downey & Co., that if the taxes assessed against him were not paid by any abutting property owner the city should give the contractor three days' notice thereof before the work reach such person's property, and that the paving in front of such property should not be done. No notice of this kind was given.

There was no authority in the charter for paying either the city engineer or the city treasurer out of this paving fund the amounts so paid to them as above found, but the taxes assessed, levied, and collected were forbidden to be used for any other purpose except to pay for collecting the same and for the work done in paving the streets.

These are the material facts to be found in disposing of the questions involved in this appeal, so far as we have been able to dig them out of a very bulky statement of facts, without an index.

Upon the evidence, the court submitted to the jury two special issues, as hereinbefore stated; that is, as to whether appellant had been properly credited with the $4,014, which was paid to Masterson in certain paving tax receipts of one Adams, which Masterson took for cash, and whether there had been a settlement between Masterson and the city, where-

by he was not to be charged with certain accrued interest on bonds turned over to him in settlement of the one-third of the cost of the paving to be paid for in this way, upon both of which issues the jury found in favor of appellee. Preliminary to a consideration of the assignments of error, appellant presents what is charged to be an error apparent of record, and which we are asked to consider as such without assignment.

[1] It is set out in the statement of this error, "apparent of record," that the undisputed evidence shows that appellee's cause of action was upon a balance due upon a warrant issued by the city, and that the only provision made by the city for the payment of that portion of the paving indebtedness that was to be paid by assessment against the abutting property owners was the passage of a certain ordinance providing for the assessment of taxes against such property owners, and no provision was made for the payment of interest or the creation of a sinking fund for the liquidation of said debt. It is also stated that said warrant was for the balance due on the cash part of said indebtedness, and that all assessments made which were collectible had been paid on such paving contract; and that therefore the court erred in not instructing the jury to find a verdict for the defendant, and in submitting any issue of liability to the jury. Upon this assignment, the proposition is stated that the city, having made no provision at the time said debt was created to assess and collect annually a sufficient sum to pay interest thereon and create a sinking fund of at least 2 per cent., was not liable; it having paid all sums collected from the special assessments upon said indebtedness.

[2, 3] It will be clearly seen that in order to determine whether the error exists, as complained of, will require an examination of almost the entire record, including the pleadings and the evidence contained in a very lengthy statement of facts. In the late case of Houston Oil Co. v. Kimball (Sup.) 122 S. W. 536, 537, the Supreme Court clearly defines what is meant by "error apparent on the face of the record," as used in article 1014, R. S. Without incumbering this opinion with quotations from the opinion in the cited case, we think it clear that the alleged error which we are here called upon to consider is not "error apparent upon the face of the record," and, in the absence of a proper assignment, cannot be considered. Searcy v. Grant, 90 Tex. 97, 37 S. W. 320. If we were called upon to consider the assignment, we would hold that it is without merit. The provisions of the Constitution referred to (article 11, §§ 5–7) have no application—in the nature of the case can have no application—to this case. Provision was made to pay cash for the work (two-thirds of it), and it was not contemplated that

there would be any unpaid balance to provide for. That failure to collect part of the taxes created a deficit did not require that the city foresee that such would occur, and treat it as a debt, within the meaning of the article of the Constitution referred to. 20 Am. & Eng. Ency. of Law, 1176; Spilman v. Parkersburg, 35 W. Va. 605, 14 S. E. 279; Winston v. Ft. Worth (Sup.) 47 S. W. 740.

[4] By its first and second assignments of error, appellant complains of the ruling of the court in refusing to sustain its special exception to so much of the petition as claims interest on the amount due upon the indebtedness sued for, and also in not submitting to the jury the question of interest; it being a question of fact whether payment had been willfully withheld. In the proposition under these assignments, appellant treats the suit as based solely upon the warrant. This is not a fair presentation of appellee's cause of action, as set out in his petition. The suit is primarily upon the contract for money due for work fully performed, and to be paid for when so performed. The warrant was merely the treasurer's authority to pay the money which, by the terms of the express contract, was due, and was not intended to serve any other purpose. This fact, we think, clearly distinguishes this case from Ashe v. Harris County, 55 Tex. 49, and other cases generally on this point, of which a very full discussion will be found in note to County Commissioners v. John Kaul, 17 L. R. A. (N. S.) 552; R. S. art. 310; Risley v. Andrew, 46 Mo. 382; State v. Trustees, 61 Mo. 155; Langdon v. Castleton, 30 Vt. 285; Yellowly v. Pitt County, 73 N. C. 164.

The law is thus stated in 1 Dillon, Municipal Corp. (3d Ed.) § 506: "The rule in respect to interest on debts against municipal corporations does not ordinarily differ from that which applies to individuals. Under the Missouri statute, providing generally that creditors shall be allowed interest at the rate of 6 per cent. per annum, etc., it is held that county warrants draw interest after presentment to the treasury and refusal of payment by the treasurer; the court regarding the general statute as to interest broad enough to embrace all debtors, counties as well as individuals. But in Illinois it is held that the debts of municipal corporations are payable at the treasury of the body; that interest on coupons—that is, interest on interest—cannot be recovered, unless there be a special agreement to that effect, since such corporations are not named in the act regulating interest. The court remarks: 'Whatever power these corporations may possess to contract for the payment of interest, in the absence of any express legislation on the subject, we are of opinion that their indebtedness, in the absence of such agreement, does not bear interest. If such instruments (coupons) could in any event draw interest without an express agreement, it could only be after a proper demand of

payment. Until a demand is made, such a body is not in default. They are not like individuals, bound to seek their creditors to make payments of their indebtedness.'"

It will be noted that our statute in this regard is as broad as that of Missouri. It is not to be denied that there is a line of authorities which hold that debts due by municipal corporations, even by express contract, do not bear interest, unless it is expressly so provided. Note Commissioners v. Kaul, 17 L. R. A. (N. S.) 552, supra. But we must confess that we can see no substantial reason why the appellant should not be required to pay interest on the indebtedness here sued upon in the same manner as a private citizen. But if we are in error in holding that the city should pay interest, upon the sole ground that the debt, by the express terms of the contract, is overdue, there is another reason why it should be made liable for interest in the present case. The debt was to be paid by the city, and not by the abutting property owners, so far as appellee is concerned. He has no claim against them, no enforceable demand, if they had paid not a dollar of the tax. He might have called upon appellant to enforce its demand for his benefit, but it would have been still the demand of the city. The city contracted with appellee that it would pay; the tax on abutting property owners was the fund provided out of which it was to pay. It is expressly provided by the charter that the taxes thus levied and collected should not be applied to any other purpose than paying for the cost of collection thereof and for the paving to be done. The evidence shows that the officers of the city violated its express obligation to appellee in this regard, and that they used a large amount of this fund, sufficient to have about paid appellee's debt, for other purposes entirely foreign to the purposes for which alone the fund could properly and legally have been used. Neither the payment to the city engineer nor to the city treasurer was properly or legally made out of this fund, and, a fortiori, the payment of the note to the bank and the transfer to the sewer fund were not authorized. It further appears that the city had the power to protect itself from the delinquency of abutting property owners. Appellee had none. The city had the power, and it was its duty, both under the terms of the ordinance and under the express provisions of the contract, to stop the paving in front of the property of any abutting owner, if he did not pay the tax. If this had been done, the city would not have been saddled with the debt for this much of the paving. It did not do this, but required appellee to do the paving. In such case it is neither equitable nor just that it should lay upon appellee any part of this burden, even to the extent of the loss of the interest after the debt was due.

In the case of Vider v. City of Chicago, 164 Ill. 354, 45 N. E. 720, much relied upon by appellant, it is said that, where money is wrongfully obtained and unlawfully detained by a municipal corporation, it would be proper to allow interest. Under this rule, we think that where, as in this case, the city had collected the taxes which, by the express terms of the contract and the charter and ordinances, could only lawfully be used to pay costs of collection and the debt due for paving, and had, in direct violation of appellee's right, diverted the same, or such portion thereof as would have paid the balance due appellee, the city should be charged with interest. Referring to the case of Ashe v. Harris County, supra, it is to be noted that there is a strong intimation that, where the debt is by express contract due at a time certain, interest should be allowed for delay in payment after such date. For the reason indicated, we do not think the court erred in holding that, as a matter of law, interest was chargeable after the debt was due by the terms of the contract. The assignments referred to are therefore overruled.

[5, 6] By the third assignment of error, complaint is made that the court erred in dismissing from the case F. W. Greer, former city treasurer, and his bondsmen. This question arose in this way: It was contended by the city that a certain item of $4,014 had been paid to Masterson by the city, and had not been credited by him, and that Greer had claimed and been allowed credit, as city treasurer, for this amount as paid to Masterson. Upon this alleged state of facts, appellant sought to make Greer and his bondsmen parties, and prayed judgment over against them for the amount, in case it should be found that the money had not been paid to Masterson. To this appellee objected, and on his plea of misjoinder these parties were dismissed. In this we do not think there was any error. Appellant does not cite any authority in support of its contention. It does not seem to us that appellant had the right to complicate the trial of the issues between itself and appellee with a trial of the issues between itself and Greer, over appellee's objection, notwithstanding it would have been convenient for it to do so. Its claim against appellee depended upon the fact that Greer had paid him this sum, and that he had not given the proper credit. Its claim against its treasurer depended upon the fact that he had not paid the money to appellee, and was to that extent a defaulter, and owed the city that amount. If this fact was true, there is no reason why appellant should not have prosecuted an independent suit against Greer. However, if we are mistaken in this, the record discloses, beyond dispute, such a state of facts as to render the error harmless. It appears that one Adams, as the owner of abutting property, owed the city $4,014 paving tax. Appellee desired to purchase of Adams a note held by him against one Deutser for $10,000. It was agreed that a receipt for this tax should be turned over

to appellee, who in turn delivered it to Adams as part payment on the amount he was to pay for the note. The evidence makes it clear, beyond dispute, that appellee gave appellant credit on its indebtedness on the paving contract for this $4,014 as so much cash. By direction of the mayor, when this transaction was had, the city ' treasurer charged himself with this $4,014 as so much cash, and his books did not show that he had paid it out. Afterwards, when his attention was called to the fact that according to his books he was chargeable with thé sum, the treasurer entered an arbitrary credit of this amount, thus balancing his account in the only way it could be done. He, in fact, did not receive the $4,014 in the first place, and should not have been charged with it, but, having erroneously charged himself with it, he did the only thing he could do to make his books correctly represent his account as treasurer by entering the credit. Appellee admitted the payment of the $4,014, and showed conclusively that it had been properly credited on his claim against the city, and explained fully and satisfactorily how it had been done. According to the undisputed evidence, appellant has no claim• against the treasurer growing out of this transaction, and, if the court had not dismissed him and his bondsmen from the case, it could not properly have done otherwise than instruct the jury to return a verdict for them, as to the claim of appellant against them.

This disposes of all of the assigned errors. Our conclusion is that there is no error in the record, and the judgment should be affirmed, and it has been so ordered.

Affirmed.