In the Matter of the Estate of AUGUSTUS C. DOWNING.*

Surrogate's Court, New York County, July 1, 1931.

*Murray, Aldrich & Webb*, for the petitioner.

*George S. Clay*, for Lucy Dillon.

*Humes, Buck, Smith & Stowell*, for the respondents.

*Kiddle, Margeson & Hornidge*, for City Bank Farmers Trust Company.

* Revd., 235 App. Div. 185.

O'BRIEN, S. On this accounting proceeding a question of construction arises. The decedent left him surviving a widow and six children. By the terms of the will he created a trust fund of his residuary estate for the benefit of his wife for life, and on the death of the wife the residuary estate to be divided into six equal parts for each of his children. These parts are to be held in further trusts during the lives of the children, and on the death of any child, leaving issue, are to be paid to the issue. The trust provision of the six identical trusts, in so far as they are material here, are as follows: " To my said daughter, Nathalie Downing, during her natural life and upon her decease I give, devise and bequeath the said one-sixth part to her lawful issue her surviving, if any, and in case of her decease not leaving lawful issue her surviving, then and in that case upon her decease to my children, Augustus C. Downing, Lizzie, the wife of Harry D. Spears, Josephine, the wife of Frederick Reiset, Helen D. Downing and Lucy Downing, *share and share alike or to the survivors or survivor* of them and in case neither of them shall survive my said daughter, Nathalie, then and in that case and upon her decease, not leaving lawful issue her surviving, to the lawful issue, if any, or if none, to the heirs or next of kin of my said children [naming the other five children]."

Nathalie L. Root, the beneficiary of the above trust, died on May 12, 1930, leaving no issue her surviving. Two of the above children of the testator survive her, namely, Josephine and Lucy. The other three children survived the testator but predeceased Nathalie L. Root. The two surviving sisters of Nathalie L. Root claim that under the above provision of the will they are entitled to this entire trust fund which was held for Nathalie, while the children of the three children of testator who predeceased Nathalie L. Root claim that they are entitled to take their parents' shares and contend that their parents were not disinherited from this trust fund by reason of their predeceasing Nathalie. I hold that the lawful issue of testator's children Augustus C. Downing, Lizzie, the wife of Harry D. Spears, and Helen D. Downing, each of whom predeceased Nathalie, upon the latter's death take share and share alike *per stirpes* and not *per capita* the share which their parent would have taken had he (or they) survived Nathalie. This interpretation is not only justified by but, upon close analysis, will be found to be in conformity with the language above used. Plainly the language provides for this disposition of the fund, for it will be noted that after directing that upon Nathalie's death her lawful issue her surviving shall take, the provision continues and directs that if no lawful issue shall survive Nathalie, " *then and in that case upon her decease, to my children Augustus C. Downing, Lizzie, the*

*wife of Harry D. Spears, Josephine, the wife of Frederick Reiset, Helen H. Downing and Lucy Downing, share and share alike, or to the survivors or survivor of them, and in case neither of them shall survive my said daughter Nathalie, then and in that case upon her decease not leaving lawful issue her surviving to the lawful issue, if any, or if none to the heirs or next of kin of my said children Augustus C., Lizzie, Josephine, Helen H. and Lucy share and share alike per stirpes and not per capita."* This language clearly means that upon the death of Nathalie the fund set up for her shall go to the following persons or groups: (1) If she should leave issue her surviving, then to that issue; (2) if she leaves no issue surviving her then to all of testator's other children (naming them), share and share alike; *or* (3) to the survivors or survivor of said children named, *and* to the issue of any of said children who shall have predeceased Nathalie and if there be no lawful issue surviving those of testator's children who predecease Nathalie then to the heirs and next of kin of said testator's children predeceasing Nathalie. The accuracy of this interpretation will be more readily recognized if one will note several important points: (1) The use of the disjunctive " or " between the names of the five children and the words " to the survivors or survivor of them," while the conjunctive " and " follows said words and joins with the survivors or survivor of the children the classes thereinafter named, viz., *the lawful issue of any of the children who predeceased Nathalie,* and if none, then the heirs and next of kin of children of testator predeceasing Nathalie; (2) the word " and " is significant and manifestly was intended to provide that the first of these classes thereinafter described should share with said survivors or survivor *per stirpes* and if there were no lawful issue of said children of testator predeceasing Nathalie then the heirs and next of kin of said predeceasing children should share with testator's children surviving Nathalie *per stirpes;* (3) if the word " neither " in the phrase " *in case neither of them shall survive my said daughter Nathalie* " be assumed to be synonymous with " none," this erroneous concept of " neither " will naturally lead to an erroneous interpretation of testator's language. If, however, the correct definition of " neither " is applied, then testator's language is readily understood and our interpretation is correct. " Neither " is defined in the Century Dictionary (Vol. 5, p. 3962) as follows:

" neither a. and pron. * * * I. a. *Not either. See either.*

" neither conj. * * * (neither, a. and pron., *being the same as either with the negative prefixed:*) I. *Not either; not in either case:* a disjunctive conjunction (*the negative of either*), preceding one

of a series of two or more alternative clauses, and correlative with nor (or, formerly. neither or ne) before the following clause or clauses."

It is interesting to note that in this dictionary similarly to " neither," the adjective, and the pronoun " neither," the conjunction is defined in the first instance as " *Not either; not in either case: a disjunctive conjunction (the negative of either) preceding one of a series of two or more alternative clauses, and correlative with nor (or, formerly, neither or ne) before the following clause or clauses.*" It is clear, therefore, that " neither " is the negative of " either." " Either," the pronoun, is defined in the Century Dictionary (Vol. 3, p. 1857) as " one or the other; one of two taken indifferently." If, then, we substitute this equivalent of " either," viz., " one or the other," with the negative, for the word " neither " in the clause now under discussion, it will read as follows: " then and in that case upon her decease, to my children, Augustus C. Downing, Lizzie, the wife of Harry D. Spears, Josephine, the wife of Frederick Reiset, Helen H. Downing and Lucy Downing, share and share alike, *or* to the survivors or survivor of them, and in case *one or the other* of them shall *not* survive my said daughter Nathalie, then in that case and upon her decease not leaving issue her surviving to the lawful issue, *if any*, or if none to the heirs or next of kin *of my said children* Augustus C., Lizzie, Josephine, Helen H. and Lucy, share and share alike *per stirpes* and not *per capita*." This latter reference to and inclusion of the heirs and next of kin of " my said children " (naming the five children other than Nathalie) *does not* upset our interpretation of the questioned language, for while it enumerates the five children, manifestly it intends only such of them *as have predeceased Nathalie*, as the use of the words " heirs and next of kin " plainly indicates; *the others* of said children would take their share of Nathalie's fund as " survivors or survivor." This interpretation of the language heretofore discussed is in complete harmony with testator's primary intention manifested throughout his will. This intention must be drawn from the whole will, which principle was aptly expressed by Judge CARDOZO in *Matter of Buechner* (226 N. Y. 440, 444), viz., " we need no canon of construction to justify that holding except, indeed, the primary one, to which all others are subordinate, that the intention of the testator is to be sought in all his words, and, when ascertained, is to prevail (*Robinson* v. *Martin*, 200 N. Y. 159, 164; *Mullarky* v. *Sullivan, supra*, [136 N. Y. 227] pp. 230, 232)." Testator's intent, as expressed in the will, was to provide equally for each of his children and the issue of any of them who should die. There is manifest the definite objective of preserving equality of dis-

tribution of his estate among all of his children. Thus, in the 6th clause, which includes the very language under discussion, testator, after adequately providing for his widow, divides the income from a trust of real and personal property during her life among his six children in equal portions and *the issue of such of his children as may have died, per stirpes,* using the following phrase in connection with the distribution of income from the trust of personalty during the life of the widow: " and the lawful issue of such of my children as may have died, that is to say, in case either of my children shall have died leaving lawful issue him or her surviving the lawful issue of a deceased child shall take collectively the share or portion the parent would have received if living." He uses similar language in providing for the distribution of income from the trust of realty during the life of the widow. The same purpose and plan of equality of distribution is shown in the provisions covering advances made to some of his children during his lifetime. He directs his trustees to reserve a certain portion of the income, otherwise payable to such children, for the repayment of any advances until they are fully discharged in the following provision in his will: " Whereas I have made advances of money to some of my said children the several amounts whereof will appear to their debit and be determined by my book of accounts, and whereas it is my will that such advances shall be repaid by them respectively but without interest, I direct my said trustees from and after my decease to apply yearly at least one-half of the amount of the aforesaid income and rents and profits applicable under the foregoing trusts, to the use of such of my said children as shall have had and received such advances to the repayment, satisfaction or discharge of such advances respectively until they shall be fully paid and discharged, such sums so applied to the discharge of such advances to form a part of the principal of my residuary estate."

To conclude, the construction placed by the court upon the language which is the subject of controversy here is the plain, simple and natural meaning of the words and phrases used by testator; moreover, it carries out the clear plan and purpose of testator in the distribution of his property as manifested in the whole will and is in accord with the well-known authorities applicable to situations similar to that presented here. (*Matter of Harden,* 177 App. Div. 831; *Matter of Andrews,* 133 Misc. 365; *Matter of Hess,* 120 id. 372, 375; *Matter of Doherty,* 227 App. Div. 265, 268.) Submit decree accordingly.